May it please the Court, I'm Cliff Weinguss. I represent the plaintiff and appellant in this case, Alex Castillo. By the way, counsel, for both sides, we do have the, there was some concern that the yarn scissors be in view. They are in view and the panel is all, all the panels looked at them. Thank you, Your Honor. This case arises out of the arrest and imprisonment of my client, Alexis Castillo, at San Francisco International Airport. As Judge Fisher has just indicated, the Court has the item that he was found to be in possession of, which Judge Alsop, the district judge, correctly referred to as yarn scissors. They were yarn scissors found inside the body of a newly packaged shirt, which was inside of a separate package, which was inside of a carry-on bag, which was itself attached to a rolling carry-on suitcase that Mr. Castillo brought to the, to the Was it obvious that the package around the shirt had been unopened? There was a factual dispute on that, Your Honor. There was one person, the, the screener at the, at the location said that it appeared that it had been opened and closed again, one, at one corner of the, of the packaging. There's other evidence the other way? Yes, there's the evidence. Mr. Castillo's If it went to trial, that would be an issue. If it went, if the Court did not reverse summary judgment on or grant summary judgment to the plaintiff on the, on the false arrest issue on the legal basis that we're pursuing here today, which is that this was neither a dirk or dagger on the, on the person of the plaintiff or a box cutter or straight razor in the plaintiff's possession. You do agree that you did, as I understand your brief, concede that this could qualify as a dirk or dagger. You're relying on the fact that it wasn't on his person. Or there wasn't Technically Excuse me, Your Honor. Or there wasn't available for use. Exactly. That's, that's the problem. And that's why the courts have always, when they talk about dirk or dagger, they focus not only on the condition of the object, what the object looks like, but its location. And that goes back to the Ruiz decision in 1928, which was uniformly accepted by the California Supreme Court and appellate courts. They focused on the fact that it was worn on the person. When the, when the California legislature amended the dirk, the 1220 statute with respect to providing a statutory definition of dirk and dagger, they said it needs to be readily accessible, which is consistent, completely consistent, with the definition of Ruiz and all the cases that followed it that said that upon the person means worn by the person. And there's, we have cited to the Court, and it's without contradiction, every published decision of California appellate courts since that time, including numerous decisions rendered after the 1993 statutory amendment and the 1995 statutory amendment and the 1997 statutory amendment, all said that all followed this, this decision, and all, in every, the factual pattern in every case, the item was worn upon the person. And it's, it goes beyond Ruiz. I wanted to alert the Court. I mentioned in my brief that the FBI was not interested in prosecuting Mr. Castillo, and although the TSA indicated that technically he could potentially be liable for a civil violation, they chose not to do so and only issued him a warning letter. And the warning letter itself is in the excerpts of the record. It's at page 37. And the Code of Federal Regulations, which addresses the issue, says the following. The individual may not have a weapon, explosive or incendiary on or about the individual's person or accessible property before entering a sterile area. So what that means is that the TSA also recognizes that carry-on luggage, which is the only accessible property that a person can have with them that is not physically worn on the person, is, in fact, not worn on the person. And that's consistent with the numerous Federal cases that we cited exactly in airport contexts where they involve seizures of property, where courts are saying that the item was not on his or was found on his person and in his carry-on luggage. We've cited numerous other authorities throughout. The Black's Law Dictionary, which is actually used in one of the unpublished decisions cited by the Respondents, also says either worn upon the person or actually carried by them, touched by their physical hand. So there is really no dispute except for this entire reliance on this one case, this one appellate department of the Superior Court case of Dunn that they rely on that interprets an entirely different statute, a statute that deals with firearms, not a statute that deals with dirk or dagger. I'd also like to point out that even within the body of the statute itself that we're dealing with, 12020, the legislature has differentiated between dirk or daggers, which must be worn upon the person, and other items, specifically items referenced in 12020a1, for which a crime is committed if they are in the possession of the defendant. So within the body of this statute itself, the legislature has had this dichotomy between items in possession and items worn upon the person since this statute was first enacted. It's a little unclear whether it was enacted in 1917 or 1923, but it's been there the entire time. And I think the fact that Mr. Castillo was never charged with this crime is the evidence that – and I recognize that under the Supreme Court's authority, that if he could have lawfully been charged with a crime for which there was probable cause, even if it wasn't the one he was charged with, that defeats a claim for false arrest and imprisonment under the Fourth Amendment. But the fact that these defendants did not charge him is very telling. And I cited to the testimony of Deputy District Attorney Wolcott, who said that she was contacted by Detective Castell of the San Mateo County Police Department, the Sheriff's Department, and Castell was asking her about particular things. She told Castell, according to Castell, that there was a violation of 171.5. Castell, when he testified, also claimed that he had talked to Ms. Wolcott about Dirk or Dagger. But when Wolcott reported back to him, she only said that this was an arrestable offense under 171.5. The significance of that comes further to light when you read Ms. Wolcott's testimony, which I referenced on pages 12 to 13 of the reply brief, where she, in a manner that was not even responsive to the question I was asking her, blurted out. When I made, in framing a question, I said that was – you understood that the scissors was found on his person or in his carry-on luggage, and she blurted out. I just want to correct you. No one told me anything about it being upon his person. So the logical inference is that when Wolcott heard Detective Castell saying Dirk or Dagger, she said, that doesn't work because this isn't on his person. We can't charge it. So six and a half months later, when the San Mateo County District Attorney's around to dismissing the case in the face of a motion to dismiss, they say we're dismissing the case because this does not meet the statutory definition of a box cutter or a straight razor under 171.5. They say nothing about Dirk or Dagger. They could have recharged them at that time if they wanted to. They did nothing of the kind, and that's because every police agency and district has said – has recognized that the item must be worn upon the person. Just to move on beyond that, Your Honors, the issue of 171.5 itself, the box cutter or the straight razor, Your Honors, I don't think that's even a close question. I think under the rules of statutory construction that apply in the State of California, there is no way that someone can turn a box cutter – or rather turn a scissors, a pair of scissors, which is indisputably what everyone referred to these things as, into a box cutter or a straight razor. Is box cutter a term of art, a defined term? It's a term that, Your Honor, if you read – we cited the case of, I think it's Michael R., which is a California case, it's a – it's a device with a retractable razor. And what's interesting, so whether it's – and, of course, that's what was known, universally known. So when, for example, when the TSA director, Mr. Hawley, announces that there are going to be some changes to what are prohibited items, he says, don't worry, we're not going to deal with box cutters or ice picks. Everyone knows what a box cutter is. So when you read cases, and there are – there are many, many, many cases, State and Federal, that refer to box cutters, the overwhelming majority don't even bother defining it because everyone knows what it is. And it's an instrument with a razor blade that is retractable. And it's interesting that that's similar to a straight razor. In both instances, you're dealing with an object which, when you look at it, you don't see the blade. The blade is not exposed. But by an action like this with a straight razor or like this with a box cutter, you can expose that blade. That's why I submit that you find those two items in the same provision. This instrument here, the blades are right there for you to see. It's a pair of scissors or shears. Those are the only words anyone used to describe it. No one of all the depositions that were taken and all the reports submitted, no one referred to this as a box cutter or a straight razor. And it is extraordinary that there would be any effort to do that. And I submit to Your Honor that when the defendants recognized this, again, it wasn't recognized at all in the criminal case. It was only recognized at the eleventh hour in the civil case. They realized the only way they could do this was by somehow trying to stretch the definition of Dirk or Dagger, and it just doesn't work. Dirk or Dagger, under California Supreme Court law, is to be strictly construed. And this was not it. Your Honor, I'd like to reserve the remainder of my time. Thank you, counsel. Good morning, Your Honors. May it please the Court. I'm Deputy City Attorney Rob Bonta. I'm representing the San Francisco appellees in this matter. I'm going to reserve about five minutes for co-defense counsel, Deputy County Counsel David Silberman, to make some argument, including some arguments that are specific to the San Mateo County appellees. In this case, as part of their duties to protect the important safety and security interests specific to airports and commercial flying, the San Francisco appellees appropriately acted to prevent a very dangerous and illegal item from getting into a sterile area of the airport and perhaps onto a plane at the San Francisco airport. We're talking about a criminal statute now that doesn't just apply in airports, right? Does this statute cover anyone who carries a pair of scissors in a suitcase? You're walking down Market Street with a pair of scissors in a suitcase. Are you committing a crime? Let me be specific about what I'm referring to. Of course, we have two statutes, which we believe there's probable cause to arrest under either. Penal code section 171.5 is specific to the airport setting. Penal code section 12020 is broader in its breadth. It does apply to that situation. It applies to any item, a dirk or dagger, which is an instrument capable of causing great bodily harm or death if it's concealed. Anyone who carries any pair of scissors anywhere in San Francisco that's wrapped up and a crime if it's concealed. Yes, you're right. It's wrapped up. I mean, you don't walk down the street with her scissors in your hand. You go to the drugstore, you buy a pair of scissors and either put it in a bag or have it wrapped up somehow. You're committing a crime when you take your scissors back to your hotel. There is probable cause for your arrest. You're not necessarily guilty. That could be this probable cause. Why aren't you guilty? Well, those are different standards, Your Honor. I know, but here, what's the difference in the stand? They may be able to prove at trial, for example, that it wasn't knowing. That might be possible. It wasn't knowing that you carried a pair of scissors in a bag? If it's knowing under your scenario, yeah, they're guilty. The people versus Rubel, Comer case. In San Francisco, whoever buys a pair of scissors is guilty of a crime. Under penal code section 12020, that's specifically what the legislature. Oh, my goodness. How can you stand there? Utter nonsense. I mean, once in a while, just use a little common sense, saying, no, of course it doesn't. I'm wrong on that. Your Honor, I mean. It's really an insult to the court to have you go on in an absurd position. Your Honor. It really is. People versus Rubel, Comer is a California State Supreme Court case. That doesn't help you. At page 330, it says. Did you look at the footnote on that? Which footnote? Footnote six. Well, we'll go into that later. I'm sorry? We'll go into the footnotes on that. Okay. But at page 330, Your Honor, I do want to make clear. It says that items that are usually considered to be innocently carried, including scissors, specifically scissors, it mentions it, would be illegal under the statute. Well, wait a minute. It has to be under the statute. It has to be concealed upon his or her person. That's correct. Well, how is carrying it in a bag concealed of a concealed upon his or her person? Well, the People v. Dunn case answers that question for us. Well, it didn't actually answer it. It talked about a gun. You have Ruiz, which says in a jury instruction, an element of the crime has to be it's concealed upon his or her person, right? No. And here's why. People v. Dunn did include the issue of a gun at an airport setting on a carry-on baggage, in a carry-on piece of luggage. It, 12025 was passed with the Dangerous Weapons Control Act in 1917 with 12020. It's the same act. It's the exact same language. The laws of statutory construction teach us that in that scenario, you interpret the terms the same. People v. Ruiz has never said, nor have any of the cases that cited it said, what plaintiff claims that it says. It did use the term worn on the person, but it didn't determine that or interpret that term or define that term to be on a man's or on their person touching their body or attached to their clothing somehow. It's never said that. And in addition, 12020 was amended in 1993 and 1995. It never included the definition that the appellants are promoting here. It never said it had to be, again, touching the body or in their clothing. People v. Dunn has been cited numerous times, and we've cited cases, including cases in which the issue is 12020, and the issue is a knife, and the issue is a knife in a bag. And in those cases, People v. Blackshire is one of them. They determined that a knife in a bag is violative of Penal Code 12020. So People v. Ruiz is a very old case. It never squarely held what the plaintiff believes it held or wanted to have held. People v. Dunn is right on point and exactly in the same factual scenario, again, part of the same act, the same article, even. What was People v. Blackshire? Yes, Your Honor. What were the facts in Blackshire? The facts in Blackshire was there was a knife concealed in a backpack carried by the appellant, and it was determined that that was upon the person within the meaning of 12020. It was actually a knife in a sheath in a backpack. So this is a violation of 171.5? What part of 171.5? A straight razor or a box cutter. Which is this, a straight razor or a box cutter? It's both. It's certainly a straight razor. If you look at the item, it's right there in front of you. It has razor blades attached to a straight handle. In addition, it's a pliable, bendable fulcrum. It could be opened up to be completely straight with razors on each end. It has a thin, sharp razor. And keep in mind, the statute itself, Penal Code 171.5, specifically uses the term any in its reference to box cutters and straight razors, meaning there's not a singular interpretation of what a box cutter is. Appellants are suggesting there's only one type of box cutter. They're suggesting there's only one type of straight razor. That's not what was contemplated in the statute by the broad use of the term any. In addition, the legislative history indicates that the very purpose of this statute is to keep usually innocent items from creating very dangerous situations on a plane. And it was written and passed by the legislature of California in direct response to the tragic incidents of 9-11. Well, I don't see these usually innocent items. They said a firearm, a hand grenade, plus box cutter or a straight razor, and a knife in excess of 4 inches, which I gather you're conceding this isn't. So it's got to be a box cutter or a straight razor. Okay. Yeah. No, that's we've always said that. It's the box cutter, straight razor portion of 171.5. And that legislative history that I'm referring to was in the supplemental excerpts of record at 351 to 55 of the San Mateos excerpt. I'd like to get you back to the situation at the airport. Somebody who works for Air Trade, who has a security clearance, is running his luggage through. And the person at the thing finds this thing and calls the police. Do they find out what his normal job is? I'm not sure, but it's not relevant. Does he have the security clearance? I'm not sure if you mentioned it at the time. No, as the Supreme Court said, qualified immunity protects everyone except the incompetent person. These cops seem to me bunglers, just plain bunglers. And for you to stand there and defend them, I don't know how you got the district court to accept your argument. You did. Will you look at the footnote 6? Tell them you're a very good lawyer. How about looking at the footnote 6 in Ruba Carlin's, tell me what that means. Okay. Let me just, while I'm flipping to that portion, Your Honor. Well, will you look for it? I'm sorry? Will you look for it? Yeah, I will. I can do both. Can you do both? Multitasking. Yeah. It's irrelevant to the determination whether or not who he worked for or what kind of security clearance he had. There's nothing, including common sense, that tells us that people who mean harm or do harm can't have security clearances or can't have certain occupations. Of course not. Of course not. And, Your Honor, again, and this is a case where there was consideration and thought and deliberation and discourse about the appropriate action here. This isn't a rush to judgment. We had supervisors come up to the scene. Sorry? They were pretty darn dumb. Well, Your Honor, I don't concede that at all. It was discussed, and certainly 12020 encompasses this item without much of a doubt. So tell me what it means. Do you find it? Am I multitasking? Yes. Yeah. I'm familiar with that, but no. Well, do you read it? For example, a person could slip a knife into a defendant's pocket without his knowledge or give a defendant a fixed blade knife wrapped in a paper towel but tell defendant the knife has a folding blade that cannot lock. In these cases, the defendant would lack the necessary mens rea. That goes to the knowledge portion, Your Honor. There was probable cause to believe that if a man in his own suitcase, which everyone in an airport setting knows you're supposed to pack yourself, in a shirt that he purchased and he handled, if that item is found there, then he had the knowledge that it was there. There was certainly probable cause for that. I don't believe footnote 6 applies in this situation. And you think that the scissors were ready for use? Absolutely. You think any, any, didn't they, they wrapped it within a shirt? You think somebody could think they were ready for use? The ready for capable use standard. How could they? They're going through the luggage. They're going to be in the hold of the plane. How are they ready for use? The ready for capable use standard as defined by the case law does not refer to where it is. It refers to its characteristics. It's. It doesn't refer to what? Where it's kept. It could be kept in a bag. But how are they ready for use? Because as soon as you take it out, you don't have to. They're on their way to the hold of the airport. They're out of his control. How can they be ready for use by this man? They're within his bag. They're in his control. They're right within his reach. No, but he had no access to the bag. It was his carry-on luggage, wasn't it? It was his carry-on luggage, yes. He was carrying it with him. He was touching it. He was holding it. He was dragging it through the airport. All right. Yeah, he had it. It wasn't his check-in luggage, Your Honor. It wasn't check-in. All right. Yeah. And it's ready for capable use because it doesn't require any mechanical manipulations. The blades are not guarded. They're out. You can immediately use them to do harm. Don't you think if you're more ready for use if you just have to open the knife than if you have to go into a suitcase, open the suitcase, tear open a package, tear open the next package, isn't it more ready for use? If all you have to do is open the knife? If you have it in your hand, perhaps, Your Honor, but they're both ready, capable of ready use. And I don't want us to mix two things. Upon the person is the part of the statute that talks about where it's kept. And People v. Dunn answers that question. Intellect baggage is okay. Capable of ready use is... People v. Dunn answers it in the case of a gun, which is a different statute. People v. Blackshire relies on People v. Dunn and applies it in the 12-0-2-0 situation to a knife in a bag. Our situation. And... But the police talked to the FBI agent. Yes, there was consultation. And he told them he wouldn't arrest him? Yes. And they didn't take that into account? They're not part of their chain of command. They believe there's probable cause to arrest. Whether someone else charges is an independent body's decision. There are arrests in San Francisco where the D.A. doesn't always charge. That's their discretion. That's a fact in any municipality. That doesn't determine whether or not, nor is it actually relevant to whether or not there was probable cause. That's an objective standard. It's an objective determination. It goes to whether they were making any competent judgments. You may want to let the... Yes. Thank you. Mr. Bonta. Good morning. My name is David Sullivan. I represent the county of San Mateo. I'm a deputy county counsel. May it please the Court. I wanted to discuss the issue that's specific to the county of San Mateo, which is the issue of causation and the Arnold v. IBM case. But before I do that, I do want to add and follow up on Mr. Bonta's comments with respect to capable of ready use.        I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. The capable of ready use language was added by the legislature in the mid-90s, when it defined what a DURC or DAGR was. And what the legislative history says as to that addition, and this is described in the Ruba Clava case, is that that language was designed to broaden and increase the number of items that would be considered DURCs or DAGRs under 12020. And so when you talk about capable of ready use, and the district court recognized this, really all you're talking about is whether the weapon needs to be manipulated. In this particular instance, and I need to add, this capable of ready use issue was raised for the first time at argument on the motion. It was not briefed by the parties, and none of the capable of ready use cases were actually cited. Now, the court of, excuse me, the district court did review them and determine correctly that the capable of ready use language doesn't apply here because, specifically, because this item was ready. It was the same weapon that it would be, you know, whether he got it out of the bag or whether it was in his hand. It didn't have to be manipulated. And I add the fact that it wasn't briefed because it's pretty critical that the record is completely silent about how long it would take him to get this weapon. All we know is it was in his roll-on bag. If you assume that he knew the weapon, nobody's How about a fountain pen? Do you think that's a weapon? Under what statute, Your Honor? Under the Dirk and Dagger. Under 12020? The Dirk and Dagger, whatever it is. Is a fountain pen, which you can pull out and threaten somebody's eye with, is that a weapon? I don't believe so. I'd have to look specifically at the definition in C-24, but I don't believe that it would qualify. Well, what's the difference? You can use it very effectively if you've got the determination to put somebody's eye out. Your Honor, I would have to refer specifically to the language. I mean, I could tell you. Ultimately, I think that this goes back to the questions you were asking earlier about the language you are referring to. It's the definition of Dirk or Dagger that's in C-24 of 1220. The fountain pen is not a Dirk or Dagger. Your Honor, I'm willing to assume for the purpose of argument that it's not, but without looking at it. Go over and you don't have to. The statute defines Dirk or Dagger as a knife or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death. Doesn't the pen qualify? It doesn't have to be a knife. It's capable of stabbing. What's the difference? You know, Your Honor, I don't know. I've never seen a case that says that a fountain pen. I suppose if you were to ---- Your Honor, I really don't understand. I assume that, yes, if you were to jab a fountain pen in someone's eye, that you could kill them, and therefore ---- All it has to do to qualify is a weapon under the statute. That's not the only element. There also has to be knowing concealment. And this is where ---- You've got it in your pocket. It's concealed. Your Honor ---- You don't go around carrying fountain pens in your hand. Your Honor, I can appreciate ---- Your Honor, I appreciate the hypothetical. Ultimately, what the Supreme Court ---- I don't think you really do appreciate the hypothetical. What the ---- I appreciate it. The Supreme Court in Rubiclava recognizes that officers are being given discretion. The idea behind 12020 and the amendments of 12020 was to protect against a situation where you've got gang members and other violent people who are taking items that they can use to kill people, and they're sticking it in their pockets. And the idea is that there's supposed to be discretion with police officers to try and determine which of those people are dangerous and should be arrested and which of those people should not. And ultimately ---- That's still okay? Well, under Dunn, it is, Your Honor. You know, again, this comes back to the qualified immunity issue. Here we have a case that interprets exactly the same logic, the exact same logic of the same act and says that it's a suitcase is on the person, concealed on the person. I don't see how you can criticize an officer for taking that case and saying, well, you know, if it's a suitcase and it's on the person, it's a suitcase that's on the person, then there's probable cause to arrest. I mean, that seems ultimately reasonable. I recognize I have very little time, if any, left. And I just want to add, you know, in this particular case, Arnold v. IBM is dispositive with respect to liability for the County of San Mateo. Arnold v. IBM says that when you're not actually making the arrest, you either have ---- you have to both have power over the arresting party and you need to exercise that power before you can be held responsible for an arrest. And here there is absolutely no evidence, none in the record whatsoever, that Detective Castell or Cheryl Wolcott, who were admittedly not in the chain of command of these officers, who were not in the scene, who did not speak to any of these people before the arrest was made, that they were in the chain of command and had some control, any control whatsoever over what these officers did. And with that, unless there are questions, I will submit. Thank you, counsel. First, I'd like to start with People v. Blackshire. People v. Blackshire is an unpublished opinion. Well, what's the effect of it? The effect of an unpublished opinion, Your Honor, I submit, is it has zero precedential value. There's absolutely no question that a district attorney or a police officer can't rely on it. No question under California law that that cannot be relied upon. Secondly, it was decided after all they the only when they say Dunn's been Dunn's been cited by other cases, they're all unpublished cases. And I submit to you there's reasons they're unpublished cases, because they don't go into analysis. And when you look at when you look at Blackshire, you see there's no mention of Ruiz. If judges think something. Excuse me? If judges in unpublished opinions think something, is it can you say a police officer couldn't be couldn't reasonably reach that same conclusion? Sort of two issues there, Your Honor. First of all, all of these cases were decided after the arrest involved in this case. So no police officer, had they even thought of it, could have considered it. And yes, Your Honor, I do say that. I do say that unequivocally. I think that that an unpublished opinion under California law has zero precedential value. That's not the question. The question was if judges who wrote the unpublished decisions came to the conclusion it could reasonably be interpreted that way, doesn't that suggest that a cop on the San Francisco airport confronted with a pair of sharp scissors like this could reasonably conclude that they were upon the person if they were in his carry-on luggage? No, because what the cop has to consider is the objective standard as to whether it's clearly established under existing law. Well, it wasn't clearly established, apparently, because some of the judges who had to confront these situations thought in the luggage was adequate. But in Blackshire, there's no discussion of Ruiz. There's no indication that anyone called Ruiz. However they got there, they understood it to be that. They were like they all they had was done. The defendant's lawyer in that case did not refer him to Ruiz. And that's an unpublished opinion and should therefore be given no regard. Is there any other basis for distinguishing Blackshire? Yes, it is, Your Honor. This was a backpack that was actually part of physically connected to the defendant's body in that case. Which he would have to take off. Which he would have to, as your own gesture indicated, he'd have to remove from his shoulders to access. In terms of the accessible, reasonably accessible. As opposed to a carry-on that's going to. Yes. In that sense, it's. Did they discuss reasonably accessible in Blackshire? Excuse me? In Blackshire, did they discuss whether it was readily accessible? Frankly, Your Honor, I don't recall. I don't have that at my disposal. Again, it was decided after any of the facts involved in this case. Just a few other points. I realize my time is dwindling away here. Rubel-Kavan, I think what Judge Noonan was pointing out, and the reference to footnote 6, follows the language in, that was cited at pages, page 331, where they give the examples of all the instances that they admittedly were troubled by of, as the Court is, as the tailor who places a pair of scissors in his jacket, the carpenter who puts an awl in his pocket, coat, pocket, this goes on in this quote. The Rubel-Kavan court had no choice but to uphold the conviction in that case because there was no question that the item was on the person. It was upon the person. It was in his pocket in that case. They were troubled by it. The absurdity doctrine that Judge Noonan referred to is exactly applicable in this case, and it's the reason why there have never been any cases, except the unpublished cases cited after this arrest, that that involved a, a, quote, unquote, a dirk or dagger that was not physically on the person. And for that reason, I think it's clear that, that the Rubel-Kava case and all the other cases that discuss the dirk or dagger, they're always on the person. And also, on the readily accessible issue, I submit to you that that, that is a, a reaffirmation by the, by the legislature of what Ruiz is saying. They're saying, Ruiz, the one provision in the statute has been there always that says it needs to be upon the person, and by, by the legislature saying it's readily needs to be readily accessible, the, the court is, is, is, I'm sorry, by the legislature saying it needs to be readily accessible, it is, it is following exactly in that situation. So unless there's anything else, I'll submit the matter. Thank you. Thank you. The case decided will be submitted. The court will take a morning recess.
judges: Reinhardt, Noonan, Fisher